1

2

3

FILED IN THE
U. S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 19, 2024

SEAN F. McAVOY, CLERK

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

5

6

REBECCA S.,[1]

No.    1:24-CV-03039-EFS

7

Plaintiff,

8

v.

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS**

9

MARTIN O'MALLEY, Commissioner of Social Security,

10

Defendant.

11

12

13

14

Due to major depressive disorder, generalized anxiety, social anxiety,

15

Bipolar I disorder, Arnold-Chiari malformation, headaches, lupus, and arthritis in

16

her back, Plaintiff Rebecca S. claims that she is unable to work full-time and

17

applied for disability insurance benefits and supplemental security income

18

benefits. She appeals the denial of benefits by the Administrative Law Judge (ALJ)

19

on the grounds that the ALJ improperly denied her claims at step two and did not

20

21

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as

22

"Plaintiff." *See* LCivR 5.2(c).

23

DISPOSITIVE ORDER – 1

properly complete the five-step evaluation. As is explained below, the ALJ erred.

This matter is remanded for further proceedings.

## I.    Background

In April 2021, Plaintiff filed an application for benefits under Title 2, and in May 2021, Plaintiff filed an application for benefits under Title 16, with both claiming disability beginning July 5, 2018, based on the physical and mental impairments noted above.[2] Her claims were denied at the initial and reconsideration levels.[3]

After the agency denied Plaintiff benefits, ALJ Jo Hoennenger held a telephone hearing in May 2023 at which Plaintiff appeared with her representative.[4] Plaintiff testified, and a vocational expert testified.[5]

After the hearing, the ALJ issued a decision denying benefits.[6] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[7] As to medical opinions, the ALJ found:

---

[2] AR 206, 220, 222, 232, 281.

[3] AR 123, 128, 135, 138.

[4] AR 46-76.

[5] *Id.*

[6] AR 14-38.  Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)-(g), a five-step evaluation determines whether a claimant is disabled.

[7] AR 24-27.

- The opinions of state agency evaluators Norman Staley, MD, and Mark Magdaleno, MD, to be persuasive.

- The opinion of state agency evaluator Carol Moore, PhD, that Plaintiff could understand and perform simple and repetitive tasks throughout an eight-hour workday; could have brief and superficial interactions with the general public, coworkers, and supervisors; could respond appropriately to infrequent changes in the workplace; and could be aware of hazards, travel independently, and follow goals set by supervisors to be persuasive.

- The opinion of state agency evaluator Renee Eisenhauer, PhD, that Plaintiff could understand, recall, and execute both simple and detailed tasks for 2-hour increments of time with regular breaks during a normal 8-hour workday; perform work that does not require interaction with the public as an essential element of the job; tolerate occasional incidental contact with the public; and would be capable of responding appropriately to occasional unpredictable changes and work setting changes to be persuasive.

- The opinion of state agency evaluator Renee Eisenhauer, PhD, that there was insufficient evidence to evaluate the claim on or before the date last insured to be unpersuasive.

- The opinions of consultative examiner Lisa Benton, ARNP, to be generally persuasive.

- The opinions of consultative examiner Jenifer Schultz, PhD, to be not persuasive.
- The opinions of treating psychologist Christopher Waters, PhD, which she incorrectly attributed to a non-medical state worker Amber Ladiges, to be not persuasive.
- The opinions of Christopher Waters, PhD, which were properly attributed to Dr. Waters to be neither valuable no persuasive.
- The opinion of consultative examiner David Morgan, PhD to be not persuasive.[8]

The ALJ also evaluated the third-party witness statement of Plaintiff's mother and found it to be inconsistent with the evidence.[9] As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through December 31, 2019.
- Step one: Plaintiff had not engaged in substantial gainful activity since July 5, 2018, the alleged onset date.
- Step two: Plaintiff had the following medically determinable impairments: lumbar degenerative disc disease, fibromyalgia, obesity,

---

[8] AR 28-31.

[9] AR 31.

lupus, generalized anxiety disorder, social anxiety, and bipolar I

disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work with the following exceptions:

   [Plaintiff] can frequently climb ramps and stairs; should not climb ladders, ropes, or scaffolds; can frequently balance, stoop, kneel, crouch and crawl; can tolerate frequent exposure to airborne irritants (such as fumes, odors, dusts, gases and poor ventilation) and hazards (such as unprotected heights and exposed moving mechanical parts); can understand and remember simple instructions; has sufficient concentration, persistence, and pace to complete simple, repetitive tasks for a normal workday and workweek; can tolerate occasional superficial interactions with coworkers, supervisors, and the general public; can tolerate occasional changes in the work place; and can follow employer-set goals.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a cleaner, housekeeper (DOT 323.687-014), a small products assembler II (DOT 739.687-030), and an ironer (DOT 302.687-010).[10]

---

[10] AR 19-33.

1    Plaintiff timely requested review of the ALJ's decision by the Appeals

2    Council and now this Court.[11]

3                    **II.    Standard of Review**

4    The ALJ's decision is reversed "only if it is not supported by substantial

5    evidence or is based on legal error,"[12] and such error impacted the nondisability

6    determination.[13] Substantial evidence is "more than a mere scintilla but less than a

7    preponderance; it is such relevant evidence as a reasonable mind might accept as

8    adequate to support a conclusion."[14]

9

10

_____

11    [11] AR 204.

12    [12] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. §§ 405(g),

13    1383(g).

14    [13] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other*

15    *grounds by* 20 C.F.R. §§ 404.1520(a), 416.920(a) (recognizing that the court may

16    not reverse an ALJ decision due to a harmless error—one that "is inconsequential

17    to the ultimate nondisability determination").

18    [14] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.

19    1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The

20    court "must consider the entire record as a whole, weighing both the evidence that

21    supports and the evidence that detracts from the Commissioner's conclusion," not

22    simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*,

23

DISPOSITIVE ORDER - 6

1

### III.    Analysis

2      Plaintiff seeks relief from the denial of disability on four grounds. She

3  argues the ALJ erred when she failed to consider that her Arnold Chiari

4  malformation caused her to experience frequent migraine headaches.  Additionally,

5  Plaintiff asserts that the ALJ erred in her evaluation of the medical opinions

6  regarding Plaintiff's mental impairments, erred in her evaluation of Plaintiff's

7  testimony, and erred by not properly addressing the listings.   The Commissioner

8  counter argues there was no error because Plaintiff has the burden to prove at step

9  two specific limitations and did not do so, that the ALJ properly considered that

10 Plaintiff's testimony was inconsistent with her daily activities, that the ALJ

11 properly considered the medical opinions and that there was no clear evidence that

12 Plaintiff's impairments met a listing.  The Court disagrees with the Commissioner,

13 as it finds that the ALJ failed to address the issue of migraine headaches and erred

14 at step two. As is explained below, the ALJ's analysis contains consequential error.

15 **A.    Step Two (Severe Impairment): Plaintiff establishes consequential**

16      **error.**

17      Plaintiff argues that the ALJ erred at step two by failing to evaluate

18 whether her migraine headaches are a severe impairment. The Court agrees.

19

20

_____

21

22 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does

23 not indicate that such evidence was not considered[.]").

1    1.    Standard

2        At step two of the sequential process, the ALJ determines whether the

3    claimant suffers from a "severe" impairment, i.e., one that significantly limits her

4    physical or mental ability to do basic work activities.[15] This involves a two-step

5    process: 1) determining whether the claimant has a medically determinable

6    impairment and 2), if so, determining whether the impairment is severe.[16]

7        Neither a claimant's statement of symptoms, nor a diagnosis, nor a medical

8    opinion sufficiently establishes the existence of an impairment.[17] Rather, "a

9    physical or mental impairment must be established by objective medical evidence

10   from an acceptable medical source."[18] Evidence obtained from the "application of a

11   medically acceptable clinical diagnostic technique, such as evidence of reduced joint

12   motion, muscle spasm, sensory deficits, or motor disruption" is considered objective

13   medical evidence.[19] If the objective medical signs and laboratory findings

---

[15] 20 C.F.R. §§ 404.1520(c), 416.920(c).

[16] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[17] *Id.* §§ 404.1521, 416.921.

[18] *Id.* §§ 404.1521, 416.921.

[19] 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019). *See also* 20 C.F.R. §§ 404.1502(f), 416.902(k), 416.913(a)(1).

demonstrate the claimant has a medically determinable impairment,[20] the ALJ must then determine whether that impairment is severe.[21]

The severity determination is discussed in terms of what is *not* severe.[22] A medically determinable impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."[23] Because step two is simply to screen out weak claims,[24] "[g]reat care should be exercised in applying the not severe impairment concept."[25]

---

[20] "Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements (symptoms)." *Id.* §§ 404.1502(g), 416.902(l).

> Laboratory findings means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques. Diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X–rays), and psychological tests.

*Id.* §§ 404.1502(c), 416.902(g).

[21] *See* Soc. Sec. Ruling (SSR) 85-28 at *3 (1985).

[22] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[23] *Id.*; *see* SSR 85-28 at *3.

[24] *Smolen*, 80 F.3d at 1290.

[25] SSR 85-28 at *4.

Step two "is not meant to identify the impairments that should be taken into account when determining the RFC" as step two is meant *only* to screen out weak claims, whereas the crafted RFC must take into account all impairments, both severe and non-severe.[26]

## 2.    Plaintiff's Testimony

Plaintiff provided testimony regarding migraine headaches and "daily headaches" both in written form and during her hearing testimony.

### a.    *Written Testimony*

On May 21, 2021, Plaintiff submitted an undated Adult Function Report.[27] Plaintiff said that she lived in an apartment with family, felt personally attacked when criticized, gets panic attacks in crowds, does not deal with stress well, and has difficulty getting out of bed due to depression.[28] Plaintiff said that she cares for her son, and cleans, makes meals, or goes to the store as needed; that her mother helps her; and that she has difficulty with falling and staying asleep and with fatigue.[29] She said that she needs frequent reminders to do things and that she sets alarms on her phone but needs additional reminders.[30] She said she makes meals

---

[26] *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017).

[27] AR 305-312.

[28] AR 305.

[29] AR 306.

[30] AR 307.

such as sandwiches, cheeseburgers and frozen meals a few times a day and that

she is does not like to use the stove because it makes her nervous.[31] She does

housework such as laundry, dishes, mopping, vacuuming, and dusting; but she will

not do outside work in the sun and she needs to be reminded to do her chores.[32]

Plaintiff will go outside but will not leave home unless necessary and reported that

she walks or gets a ride when she goes out because she does not have a license.[33]

She said that she shops for groceries in the store once a month and shops online for

diapers and household items, and that she is able to count change and pay bills.[34]

Plaintiff said her hobbies are reading, coloring and crafts, and that she does them a

couple times a week but does not have much ambition for anything else.[35] She said

that she texts a friend daily and sees the friend once a week in person; that she

goes to church and a support group weekly; and that she gets nervous around

others.[36]

    Plaintiff said her conditions affect her ability to lift, bend, walk, remember

things, concentrate and understand; and explained that she can lift 20 pounds and

---

[31] *Id.*

[32] *Id.*

[33] AR 308.

[34] *Id.*

[35] AR 309.

[36] *Id.*

walk for up to a mile and that bending hurts her back.[37] She said she can follow

written instructions well but forgets spoken instructions quickly, and that when

she worked at McDonalds there were multiple complaints about her work.[38] She

said she does not handle stress or change well and that she is scared of bodies of

water, fire, and electricity.[39] She wears glasses daily.[40]

### b.    *Hearing Testimony*

On May 11, 2023, Plaintiff appeared with her attorney for a hearing before

ALJ Jo Hoenninger.[41] Plaintiff and a vocational expert (VE) testified.[42] Plaintiff

said she was 5'1" tall and weighed 230 pounds.[43] She lives with her mother and

son, and was currently receiving TANF, food stamps, and Medicaid.[44] She said that

she did not have a driver's license, and walks to the clinic or grocery store or has

occasionally used medical transportation for medical appointments.[45] She has a

---

[37] AR 310.

[38] *Id.*

[39] AR 311.

[40] *Id.*

[41] AR 46-76.

[42] *Id.*

[43] AR 52.

[44] AR 53.

[45] AR 54.

GED and a certification as a phlebotomy technician.[46] She worked for two weeks in a grocery store but left because she moved.[47] She said she has not volunteered since July 2018, has not received unemployment, and has not applied for any jobs.[48] She said she cannot get a job because she has a bad record and she would need too many accommodations from an employer.[49] She said she was on a mood stabilizer and was supposed to start another but so far the mood stabilizer was not effective after taking it of a couple months.[50] She said she smokes but has not used alcohol since 2019, and that she also used marijuana until 2019.[51]

As to household chores, Plaintiff said she cares for her son, goes the store twice week as needed, cleans the litter box, vacuums the floor, and puts groceries away.[52] Plaintiff said she does not cook, do dishes, do laundry, or do gardening or lawn chores but cleans the tub.[53] She said she had been going to Grief Share but that she did not visit family or friends, and only has one friend who will come over

---

[46] *Id.*

[47] AR 55.

[48] AR 55-56.

[49] AR 56.

[50] *Id.*

[51] AR 56-57.

[52] AR 57-58.

[53] AR 58.

once or twice a month.[54] She said she does not go out to eat or to movies and her hobby is crafting, like jewelry making.[55] She has the TV on all day because she does not like silence, she does not listen to music, and she will read posts on Facebook but does not post herself.[56] Plaintiff said she worked at McDonald's for a couple weeks but had to leave because she was having trouble with incontinence because of her colitis and could not walk to and from work.[57] She said she still has problems from colitis.[58] Plaintiff said that because of the Chiari malformation she had daily headaches and had migraines three times a week.[59] She said the migraines feel like a spike in her head and when she has time she needs to lay down for an hour and will end up falling asleep.[60] She said that medication does not help, only rest helps.[61]

Plaintiff testified that her depression and anxiety are constant and that her depression makes her so lacking in motivation that she cannot even go outside to

---

[54] AR 58-59.

[55] AR 59.

[56] AR 59-60.

[57] AR 61.

[58] *Id.*

[59] *Id.*

[60] AR 61-62.

[61] AR 62.

1    play with her son.[62] Her anxiety makes her afraid of everything.[63] She said her

2    mother helps her care for her son and will get bottles, do laundry, cook, and watch

3    Plaintiff's son while Plaintiff lies down. [64]

4          3.    <u>Relevant Medical Records</u>

5          There is little evidence in the record regarding treatment for migraine

6    headaches and headaches, but the record is clear as to their existence.  Notably,

7    the medical record references "headaches" in 140 places and references "migraines"

8    in 158 places.

9          In January 2018, prior to her alleged onset date and date last insured,

10    Plaintiff was examined by John Baumeister, DO, who noted that she presented

11    with a headache and report of numbness during her visit.[65] At an appointment in

12    March 2018, Plaintiff presented to Dr. Baumeister with complaints of a headache,

13    poor balance, and numbness.[66]  When seen by Dr. Baumeister on April 20, 2018,

14    Plaintiff was experiencing a migraine headache as well as dizziness and poor

15

16

17

18    [62] *Id.*

19    [63] AR 62-63.

20    [64] AR 63.

21    [65] AR 370, 372.

22    [66] AR 395.

23

balance.[67] At an August 2018 appointment with Dr. Baumeister, Plaintiff again was experiencing a migraine headache.[68]

On October 11, 2018, Plaintiff reported to ARNP Rebecca Nelson that she had discontinued Topiramate 4-5 months prior because despite taking 100 Mg 3 times a day she had no improvement in her migraine headaches.[69] She reported that she had also taken Depakote in the past for migraines without any improvement.[70] ARNP Nelson assessed that Plaintiff suffered "chronic daily headaches.[71]

On December 11, 2018, Mickey Cates, PA-C, documented that Plaintiff suffers from both migraines and fibromyalgia secondary to Arnold Chiari syndrome and mild cord compression.[72] PA Cates also noted that Plaintiff suffered daily headaches.[73]

At an appointment with ARNP Nelson on March 21, 2019, Plaintiff was complaining of a migraine and advised ARNP Nelson that she was not taking

---

[67] AR 446.

[68] AR 462.

[69] AR 472.

[70] Id.

[71] AR 473.

[72] AR 913.

[73] AR 476.

medication for the migraines because it had been unhelpful but was trying to control the migraines by drinking two liters of caffeinated soda throughout the day each day.[74] ARNP Nelson opined that she had not been on a high enough dose of Topamax to control the migraines and told Plaintiff to stop drinking caffeine and to take a higher dosage of Topamax, which she then prescribed.[75]

In June 2020, Lacey Villamar of Comprehensive Healthcare noted that Plaintiff suffered from "frequent headaches."[76] On October 15, 2021, Plaintiff again presented to Dr. Baumeister with a migraine headache with poor coordination and "shaking."[77] An intake form completed on January 4, 2023, by Mary Kelley of KVH Family Medicine indicated that Plaintiff's records showed she suffered migraines frequently and had been prescribed Topamax.[78]

4.    Analysis

As an initial matter, the Court notes that the ALJ never even mentioned headaches or migraines in her decision.  When addressing Plaintiff's Arnold-Chiari malformation, the ALJ stated:

> A cervical spine MRI revealed a mild Chiari malformation and mild
> C5-C6 cord compression, and the claimant was taking Topiramate

---

[74] AR 502.

[75] *Id.*

[76] AR 1026.

[77] AR 1116.

[78] AR 829.

(Topamax) to treat associated pain. (Ex. 1F, p. 15). The Topiramate dosage increased over time.[79]

Topamax is used as an anticonvulsant for those who suffer seizures or for the treatment of migraine headaches.[80]  The record was clear that Plaintiff was prescribed Topamax because she had migraine headaches and the ALJ failed to directly address Plaintiff's migraine headaches and instead referred to "associated pain."

The ALJ treated the March 2019 medical notes from ARNP Nelson in a similar fashion.  As noted above, in March 2019, ARNP Nelson opined that Plaintiff's migraines had not been treated with a proper dosage of Topamax and advised Plaintiff that her attempts to control migraine headaches with the use of caffeine should be replaced with a proper dosage of Topamax.[81]  The ALJ referenced those notes but characterized the record as follows:

> The claimant sought medication refills in March 2019 because she was moving to upstate New York. (Ex. 2F, p. 36). She received Topiramate, metformin, her ProAir inhaler, and Seasonique. Rebecca Nelson, ARNP, advised the claimant to stop drinking soda. Although lab work did not confirm diabetes, Ms. Nelson thought metformin would help with weight loss. (Ex. 2F, p. 39).[82]

---

[79] AR 24.

[80] [Topamax: Uses, Dosage, Side Effects - Drugs.com](#) (last viewed August 15, 2024)

[81] AR 502.

[82] AR 24-25.

Here, the inference given by the ALJ was that ARNP Nelson advised Plaintiff not to drink soda due to weight loss issues.  That is erroneous.  The record was clear that Plaintiff drank caffeinated soda in an attempt to control her migraines and that ARNP Nelson advised her not to drink soda because she wanted to prescribe what she thought would be a therapeutic dosage of Topamax that would control the headaches.

The ALJ also failed to understand the significance of the fact that Plaintiff's migraines were often associated with numbness, according to Dr. Baumeister.[83] Migraine aura is the term to define sensory and visual disturbances which are associated with migraines and can include blind spots, vision changes, sensitivity to light and sound, and numbness and tingling in the hands and face.[84] The fact that a migraine is associated with aura is relevant to the disabling nature of the migraine or non-headache sensory event because blind spots, vision changes, and photo sensitivity can cause safety issues in the workplace and are likely to interfere with the ability to work. In her decision, the ALJ failed to address Plaintiff's migraine aura symptoms entirely and failed to consider the extent that those symptoms are likely to interfere with the ability to work. This was error.

_____

[83] AR 370, 372, 395, 446, 1116.

[84] Mayo Clinic, *Migraine with Aura – Symptoms and Causes*, www.mayoclinic.org (August 15, 2024).

Here, the ALJ has ignored clear evidence that Plaintiff suffered from migraine headaches and failed to consider evidence of migraines both with and without aura.  This is error.

  a.  _The ALJ's duty to develop the record_

"The ALJ always has a special duty to fully and fairly develop the record" to make a fair determination as to disability, even where, as here, "the claimant is represented by counsel."[85] This "affirmative responsibility to develop the record" is necessary to ensure that the ALJ's decision is based on substantial evidence.[86]

On this record, without a treating or examining medical opinion, the Court "cannot conclude that the ALJ's decision was based on substantial evidence . . . [when taking] the totality of [the claimant's] medical conditions into account."[87]

Because there is no medical opinion of record providing for Plaintiff's functional limitations during migraine and migraine aura, the record is undeveloped.   This stands as a failure to develop the record.

---

[85] _Celaya v. Halter_, 332 F.3d 1177, 1183 (9th Cir. 2003) (cleaned up).

[86] _Id._ at 1184.

[87] _Id._

DISPOSITIVE ORDER - 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

5.    <u>Summary</u>

Because the ALJ did not properly consider whether Plaintiff's migraine headaches and migraine aura were severe impairments, a remand is warranted. Moreover, because there is no medical opinion of record assessing Plaintiff's functional limitations based on such impairments, the record is undeveloped.  On remand, the ALJ is directed to develop the record as necessary either by obtaining a consultative examination or obtaining the testimony of a medical expert.

**B.    Medical Opinion: Plaintiff establishes consequential error**

Plaintiff argues the ALJ erred in her evaluation of the medical opinions.[88] Specifically, Plaintiff argues that the ALJ erred in crediting Dr. Water's medical opinions to a DSHS staff member and also erred in her analysis of Dr. Morgan's opinions.  It is notable that in his response brief the Commissioner failed to respond to Plaintiff's argument that the ALJ attributed Dr. Waters' opinions to a DSHS staff member.  It is surprising that the Commissioner failed to address a clear and serious error in the decision that the ALJ attributed the opinions of a treating psychologist to a layperson who is not even an acceptable medical source.

---

[88] An ALJ must consider and articulate how persuasive she found each medical opinion, including whether the medical opinion was consistent with and supported by the record. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

The Court agrees with Plaintiff that the ALJ's error was consequential and concludes that remand is warranted.

1. <u>Standard</u>

The ALJ was required to consider and evaluate the persuasiveness of the medical opinions and prior administrative medical findings.[89] The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[90] Supportability and consistency are the most important factors,[91] and the ALJ must explain how she considered the supportability and consistency factors when reviewing the medical opinions and support her explanation with substantial evidence.[92] The ALJ may consider, but is not required to discuss the following additional factors: the source's relationship to Plaintiff such as length of the treatment, purpose of the treatment relation and whether the source examined Plaintiff, as well as whether the source had advanced

---

[89] 20 C.F.R. §§ 404.1520c(a), (b); 416.920c(a), (b).

[90] 20 C.F.R. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)–(5).

[91] *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2).

[92] *Id.* §§ 404.1520c(b)(2);  416.920c(b)(2); *Woods v. Kijakazi*, 32 F.4th at 785 ("The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up).

1    training or experience to specialize in the area of medicine in which the opinion

2    was being given.[93] When considering the ALJ's findings, the Court is constrained to

3    the reasons and supporting explanation offered by the ALJ.[94]

4        2.    Relevant Medical Records

5        Because Plaintiff argues that the ALJ erred when evaluating the medical

6    opinions relating to Plaintiff's mental impairments, the Court recites only the

7    medical opinions that are relevant to that issue.

8        a.    Dr. Moore

9        On July 31, 2021, at the initial stage, Plaintiff's file was reviewed by state

10   agency evaluator Carol Moore, PhD.[95]  Dr. Moore opined that overall Plaintiff had

11   a moderate limitation in the following four functional areas: understand, remember

12   or apply information; interact with others; concentrate, persist or maintain pace;

13   and adapt or manage oneself.[96] Dr. Moore opined that Plaintiff's ability to

14   understand and remember detailed instructions was moderately limited; that her

15   ability to carry out short and simple instructions was moderately limited; that her

16   ability to maintain attention and concentration was moderately limited; that her

---

[93] Id.

[94] See Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court
review is constrained to the reasons the ALJ gave).

[95] AR 83.

[96] AR 82.

ability to work in coordination with her proximity to others without being distracted was moderately limited; and that her ability to complete a normal work day or work week was moderately limited.[97] Dr. Moore also opined that Plaintiff would be moderately limited in the ability to interact with the general public, to get along with coworkers or peers, to respond appropriately change in the workplace, and to set realistic goals.[98] Dr. Moore explained that Plaintiff would be capable of only brief and superficial interaction with others and would be able to respond to infrequent change in the workplace.[99]

### b. _Dr. Eisenhauer_

On March 2, 2022, at the reconsideration stage, Plaintiff's file was reviewed by state agency evaluator Renee Eisenhauer, PhD.[100] Dr. Eisenhauer opined that overall Plaintiff had a mild limitation in the functional areas of understand, remember or apply information; and had a moderate limitation in the following three functional areas: interact with others; concentrate, persist or maintain pace; and adapt or manage oneself.[101] Dr. Eisenhauer opined that Plaintiff had a moderate limitation in the following functions: maintain attention and

---

[97] AR 85-86.

[98] AR 86.

[99] _Id._

[100] AR 105.

[101] _Id._

concentration for extended periods; perform activities in a schedule, maintain

attendance, and be punctual; and complete a normal work day or work week

without interruption.[102] Dr. Eisenhauer opined that Plaintiff would have a

moderate limitation in interacting with the public and in responding to changes in

the workplace.[103] Dr. Eisenhauer explained that Plaintiff should be limited to

occasional incidental contact with the public and to occasional changes.[104]

Dr. Eisenhauer opined that there was insufficient evidence to evaluate the claim on

or before the date last insured.[105]

               *c.*    <u>*Dr. Morgan (first examination)*</u>

On January 8, 2021, David Morgan, PhD, examined Plaintiff at the request

of the Washington State Department of Social Services.[106] Dr. Morgan reviewed

DSHS records prior to the examination.[107] Dr. Morgan's report included a

psychosocial history, treatment history, education and work history, substance use

history, mental status examination, diagnosis, prognosis, and medical source

---

[102] AR 109.

[103] *Id.*

[104] *Id.*

[105] AR 116.

[106]  AR 566-570.

[107] AR 566.

statement.[108] Plaintiff reported that she had mental health issues for ten years and described an episode a year prior of drinking alcohol, reported that when depressed she did not want to do anything and could not concentrate, and stated that she worries all the time.[109] Plaintiff reported that she was in counseling but not taking psychotropic medication because she was breastfeeding.[110] Plaintiff reported that she had a GED and phlebotomy training and said she had worked in a bakery, a deli, and a fast food place but had not worked since 2018.[111]

On mental status examination, Plaintiff had normal speech, anxious mood, and no abnormality in the following: thought process, orientation, perception, memory, fund of knowledge, concentration, abstract thought, insight, or judgement.[112] Dr. Morgan diagnosed Plaintiff with Generalized Anxiety Disorder and Major Depressive Disorder, recurrent episode, moderate.[113] Dr. Morgan opined that Plaintiff would have a moderate limitation in the following activities: understand, remember, and persist in following detailed instructions; learn new tasks; perform routine tasks without special supervision; make simple work related

---

[108] AR 566-570.

[109] AR 566.

[110] AR 566-567.

[111] AR 567.

[112] AR 570.

[113] AR 567.

decisions; ask simple questions or request assistance; communicate or perform effectively in a work setting; and set realistic goals and plan independently.[114] Dr. Morgan opined that Plaintiff would have a marked limitation in the following abilities: perform activities within a schedule, maintain attendance, and be punctual; adapt to changes in a work setting; maintain appropriate behavior; and complete a normal work day or work week without interruption from symptoms.[115] Dr. Morgan opined that Plaintiff's limitations were not the result of substance use and would last at least 12 months.[116]

        *d.*    <u>*Dr. Waters*</u>

On January 13, 2021, Christopher Waters, PhD, and Plaintiff's primary treating mental health source, completed a Documentation Form for Medical or Disability Condition, at the request of a Washington State Department of Social and Health Services staff member named Amber Ladiges.[117] The ALJ incorrectly attributed the form as having been authored by Ms. Ladiges, who is not a licensed mental health provider and who works as a Social Services Specialist for the State

---

[114] AR 568.

[115] *Id.*

[116] *Id.*

[117] AR 573-575.

of Washington.[118] Dr. Waters wrote that Plaintiff has the following diagnosis:

bipolar I disorder; generalized anxiety disorder, social anxiety disorder, special

education services for math and read, and a reported history of Asperger's

Syndrome.[119]

Dr. Waters wrote:

> Patient's mood instability and anxiety significantly interfere with her
> ability to learn and work outside the home. She becomes severely
> anxious around others. She has difficulties communicating her needs.
> She can be manipulated by others. She has difficulty establishing
> routines that are consistent enough to work.[120]

Dr. Waters stated that Plaintiff took psychotropic medication in the past but was

temporarily not taking them because she was breastfeeding, but said she still

attends psychotherapy twice a month.[121]

On June 21, 2021, Plaintiff was examined by Dr. Water who noted that she

had a blunted affect; was reserved but spoke; had a mildly depressed mood; had

mild anxiety; was oriented, organized, and goal-oriented; appeared to have low

energy quite often; had monotone speech, and had fair insight and

---

[118] OpenPayrolls. www.openpayrolls.com/Amber_Ladiges-107829515. (Last viewed August 15, 2024).

[119] AR 573.

[120] AR 573.

[121] AR 574.

judgment.[122]Dr. Waters opined that Plaintiff appeared to be able to function well enough to care for her child but not to work.[123] On July 21, 2021, Plaintiff presented to Dr. Waters.[124] On mental status examination, Plaintiff was cooperative but was reserved and had little eye contact; she had regular speech; her mood was depressed and her affect was blunted; she had a logical and goal-directed thought process; she had no delusions, hallucinations or suicidal thoughts; her attention and concentration were intact and she was oriented; her memory was challenged; and her insight and judgment were fair.[125] Dr. Waters assessed Plaintiff with social anxiety disorder; bipolar I disorder, depressed, moderate; and generalized anxiety disorder.[126] Dr. Waters stated that Plaintiff had chronic symptoms of depression, anxiety, and irritability, but opined that she seemed to function better with a low stimulation environment, no work, and limited social expectations.[127]

---

[122] AR 641.

[123] *Id.*

[124] AR 645.

[125] AR 646-647.

[126] AR 647.

[127] *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

        *e.*     <u>*Dr. Schultz*</u>

On February 20, 2022, Plaintiff was examined by consultative examiner Jenifer Schultz, PhD, at the request of the Commissioner.[128] Dr. Schultz reviewed medical records from Klickitat Valley Health, Comprehensive Healthcare, and Family Medicine.[129]  Plaintiff reported to Dr. Schultz that her main complaints are an Arnold-Chiari malformation, lupus, arthritis in her back, polycystic ovary syndrome, and hidradenitis suppurativa.[130] She said that she cannot hit her head and senses movement in her brain, that she lacks fluid in her skull, that she cannot be in the sun because of her lupus, that her back pain was currently a 5/10, that her polycystic ovary syndrome caused occasional cramping, and that her skin condition causes boils and cysts on her skin.[131] Plaintiff said she was diagnosed with Asperger's syndrome and that she has only one friend, and cannot tolerate loud noises but has no other sensory issues.[132] Plaintiff also said she has anxiety and worries all the time, and she limits going outside because she has panic attacks when she does and worries she will be hit by a car or attacked by an

---

[128] AR 710-714.

[129] AR 711.

[130] AR 710.

[131] *Id.*

[132] *Id.*

animal.[133] Plaintiff also reported that she has bipolar disorder and that when

manic she will have spending sprees and not be able to focus.[134] She said that when

depressed she will have no energy and does not want to get out of bed.[135]

Plaintiff reported mental health treatment since she was 16 years old and

was hospitalized for cutting herself, and said her symptoms have not changed in

the last 6 months and that she did not think treatment was helpful.[136] Plaintiff

reported going out increases anxiety and getting in bed relieves it; and said she

abused alcohol at 17 and 19 years old but currently does not use alcohol or

substances.[137] Plaintiff reported that she smokes half a pack of cigarettes a day and

drinks 2 liters of caffeinated beverages a day.[138] Plaintiff reported that she was

raised by abusive grandparents, worked for two weeks at a McDonald's before

being fired, went to the eighth grade in special education but obtained a GED, had

no criminal history, and currently was taking no medication.[139]

---

[133] AR 711.

[134] *Id.*

[135] *Id.*

[136] AR 711.

[137] *Id.*

[138] AR 711-712.

[139] AR 712.

On mental status examination, Plaintiff was appropriately dressed; was cooperative; had constricted affect and congruent mood; had no suicidal or homicidal ideation; had normal speech; was oriented to day and year but not place; had intact memory; had limited fund of knowledge; had adequate concentration; was not able to complete abstract thinking tasks; and had limited insight and judgment.[140] Plaintiff reported that her mother does most household chores but she is able to pay bills and take care of her personal needs; that she does not attend church or social groups and only has one friend who she sees weekly; and engages in hobbies of painting, making jewelry, and drawing but does not finish them.[141]

Dr. Schultz diagnosed Plaintiff with Bipolar I, Unspecified Anxiety Disorder, and Rule out for Asperger's Syndrome.[142] Dr. Schultz opined that Plaintiff could think in an abstract manner and reason; has fair understanding and intact memory; has a fair ability to concentrate; does not finish her tasks, indicating she is not persistent; has limited social interaction; and has poor social skills, daily living skills, and occupational adaptation.[143]

---

[140] AR 712-713.

[141] AR 713.

[142] AR 713-714.

[143] AR 714.

1

       *f.*    <u>Dr. Morgan (second examination)</u>

2
       On January 31, 2023, Plaintiff was examined for a second time by David

3 Morgan, PhD, at the request of the Washington State Department of Social

4 Services.[144] Prior to the examination, Dr. Morgan reviewed Plaintiff's DSHS

5 records and his prior evaluation.[145] Plaintiff reported that her depression was the

6 same since her last examination, but her anxiety was worse.[146] Plaintiff described

7 that intrusive thoughts interrupted her sleep and affected her concentration, and

8 that due to depression she had no motivation and felt hopeless but not suicidal.[147]

9 Plaintiff reported that she was receiving counseling and taking psychotropic

10 medication; was living with her mother; and that she spent time at home taking

11 care of her three year old son.[148] On mental status examination, Plaintiff had

12 normal speech, anxious mood, and no abnormality in the following: thought

13 process, orientation, perception, memory, fund of knowledge, concentration,

14 abstract thought, insight or judgement.[149]

15

16

_____

17 [144] AR 1312-1316.

18 [145] AR 1312.

19 [146] *Id.*

20 [147] *Id.*

21 [148] AR 1312-1313.

22 [149] AR 1315-1316.

23

DISPOSITIVE ORDER - 33

Dr. Morgan opined that Plaintiff would have a moderate limitation in the following activities: understand, remember, and persist in following detailed instructions; learn new tasks; perform routine tasks without special supervision; make simple work related decisions; ask simple questions or request assistance; communicate or perform effectively in a work setting; and set realistic goals and plan independently.[150] Dr. Morgan opined that Plaintiff would have a marked limitation in the following abilities: perform activities within a schedule, maintain attendance, and be punctual; adapt to changes in a work setting; maintain appropriate behavior; and complete a normal work day or work week without interruption from symptoms.[151] Dr. Morgan opined that Plaintiff's limitations were not the result of substance use and would last at least 12 months.[152]

3.    <u>Analysis</u>

a.    <u>*The ALJ's consideration of Dr. Waters' January 13, 2021 opinions*</u>

As was noted above, on January 13, 2021, Dr. Waters completed a Documentation Form for Medical or Disability Condition.[153] At the time that

---

[150] AR 1314.

[151] *Id.*

[152] *Id.*

[153] AR 573-575.

Dr. Waters completed the form, he was Plaintiff's primary mental health treating source and had been seeing her twice a month on a regular basis.

The ALJ articulated her consideration of the opinions as follows:

On a DSHS form dated January 2021, Amber Ladiges listed diagnoses of Bipolar I Disorder, Generalized Anxiety Disorder, Social Anxiety Disorder, a reported history of special education services, and a reported history of Asperger's disorder. Ms. Ladiges stated that the claimant's mood instability and anxiety significantly interfere with the ability to learn and work outside the home, due to anxiety around others and significant difficulty communicating while anxious. She said the claimant had difficulty communicating her needs and could be manipulated by others. Ms. Ladiges wrote that the claimant could work 0 hours per week. She added that the condition was permanent, though the claimant would resume medications after she stopped breastfeeding. Dr. Waters also signed the form. (Ex. 4F, p. 9-12).

This opinion is not persuasive. Apparently, Ms. Ladiges supported this opinion by citing the claimant's statements and the treatment notes from the clinic. However, the conclusion about being unable to work is inconsistent with normal mental status findings during those treatment sessions. (Ex. 2F, p. 53; Ex. 6F, p. 15, 35). Additionally, the claimant told Dr. Waters that the choice between finding a job or filing for disability was difficult because she did not have anyone to watch her child if she started working. (Ex. 2F, p. 93).[154]

The ALJ's error in evaluating the opinions is clear and consequential. Pursuant to the regulations, the ALJ was obliged to consider the source's relationship with the claimant, and specialization.[155]  Clearly, the ALJ did not properly consider the treating relationship of the individual who authored the opinions, nor did she consider the fact that the person who authored the opinions

---

[154] AR 30.

[155] 20 C.F.R. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)–(5).

(Dr. Waters) was a licensed psychologist and held a specialty in the area of medicine for which he was rendering an opinion.

Overall, it does not appear that the ALJ gave much consideration to the opinions because on the face of the decision she articulates a belief that the author was Ms. Ladiges. As noted, Ms. Ladiges is not mentioned in the voluminous medical record as a provider of Plaintiff's care. Additionally, there is no indication whatsoever that Ms. Ladiges held any medical license at all or was an acceptable medical source of any type. The ALJ did not articulate any consideration of who Ms. Ladiges was and what her credentials might be, other than an implicit recognition that she was not a physician or psychologist, as she is referred to as Ms. Ladiges, rather than Dr. Ladiges.

Additionally, the ALJ articulated that she discounted the opinions because they were inconsistent with mental status evaluations made by Dr. Waters on 3 occasions. This reasoning is also flawed. First, the ALJ does not explain why she cites to such a limited number of treatment notes in what is a very lengthy and well-developed record. Additionally, even those limited examinations which appear to have been cherry-picked from the record are not entirely inconsistent with Dr. Waters' opinions. For instance, the mental status examination cited at Exhibit 2F, p. 53 indicates that Plaintiff had difficulty with concentration and memory, and that she presented with a depressed mood and blunted affect.[156] This is certainly

---

[156] AR 516.

not a mental status examination that showed "normal" results. Similarly, the

mental status examination cited at Exhibit 6F, p. 15 indicated a blunted affect,

depressed and anxious mood, fidgety behavior, social rigidity, and avoidance of eye

contact.[157] The mental status examination cited at Exhibit 6F, p. 35 indicated

blunted affect, reserved speech, monotone speech, and only fair insight and

judgment.[158]

The ALJ's consideration of Dr. Waters' opinions is flawed on its face. The

Court concludes that remand is warranted for the ALJ to properly consider the

opinion evidence and to evaluate it as to its consistency with the other opinions of

record.

b.   <u>*The ALJ's consideration of Dr. Morgan's opinions*</u>

In her consideration of both the January 2021 and January 2023 opinions of

Dr. Morgan the ALJ provided the same reasoning addressed above that the

opinions were inconsistent with the same three mental status examinations cited

above. When addressing Dr. Morgan's opinions, the ALJ articulated that there was

a lack of abnormality in "speech, attitude, affect, thought process and content,

orientation, perception, memory, fund of knowledge, concentration, abstraction,

insight, and judgment."[159] This statement is simply not supported by the record.

---

[157] AR 610.

[158] AR 630.

[159] AR 31.

4.    <u>Summary</u>

Because the ALJ erred in attributing the medical opinions of an acceptable medical source who had a long-standing treatment history with Plaintiff to a person with no apparent medical credentials and no treatment relationship to Plaintiff, and did not give good reasons for discounting the opinions of acceptable medical sources, the ALJ has erred. A remand is warranted.

**C.    Plaintiff's Subjective Complaints: The Court finds the issue moot.**

Plaintiff argues the ALJ failed to properly assess her subjective complaints. As discussed above, the ALJ failed to consider Plaintiff's migraine headaches and migraine aura and failed to consider the medical record as a whole when evaluating the medical opinions.  Because the Court has remanded the case for consideration of the record as a whole, the ALJ will be required to consider the credibility of Plaintiff's subjective complaints.

**D.    The Listings: The Court finds the issue moot.**

As discussed above, the ALJ failed to consider Plaintiff's migraine headaches and migraine aura and failed to consider the medical record as a whole when evaluating the medical opinions.  Because the Court has remanded the case for consideration of the record as a whole, the ALJ will be required to consider the listings.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**E.    Remand for Further Proceedings**

The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[160] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[161]

The Court finds that further development is necessary for a proper disability determination. Here, it is not clear what, if any, additional limitations are to be added to the RFC following a proper consideration of Plaintiff's migraine headaches.  Therefore, the ALJ should either request that Plaintiff attend a consultative examination or obtain testimony from a medical expert pertaining to Plaintiff's headaches, and then consider any additional evidence presented, and make findings at each of the five steps of the sequential evaluation process. Because the Court notes that the ALJ's failure to address Plaintiff's migraine headache in any manner and mischaracterization of treatment notes regarding her

---

[160] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[161] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

migraine headaches might create an appearance of bias, the Court also orders that a different ALJ should be assigned to hear the case.

## IV.   Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.      The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) and is to be reassigned to a different ALJ.

2.      The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 9**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 19th day of August 2024.

*Edward F. Shea*
_____
EDWARD F. SHEA
Senior United States District Judge